United States District Court
District of Connecticut
FILED AT BRIDGEPORT
8/22/2012
Roberta D. Tabora, Clerk
By: Deputy Clerk

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Grand Jury B-12-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.: 3:12CR ___ ( ) 181 (RNC) |
| | : | |
| v. | : | VIOLATIONS: |
| | : | 18 U.S.C. Section 2261A (Interstate Stalking) |
| | : | 18 U.S.C. Section 2261 (Interstate Domestic Violence) |
| | : | 18 U.S.C. Section 844(h)(1) (Use of Fire or Explosive in the Commission of a Felony) |
| FRANK MENDOZA | : | |

INDICTMENT

The Grand Jury charges:

COUNT ONE
(Interstate Stalking: Travel)

At all times relevant to this Indictment:

1. The defendant FRANK MENDOZA ("MENDOZA") resided in Jacksonville, Florida.

2. Victim #1, an adult female whose identity is known to the Grand Jury, resided in Jacksonville, Florida until September 2010, when she relocated to Connecticut.

3. Victim #2, an adult female whose identity is known to the Grand Jury, resided in Jacksonville, Florida until September 2010, when she relocated to Connecticut. Victims #1 and #2 were friends and work colleagues in Florida and Connecticut.

4. Victim #3, an adult male whose identity is known to the Grand Jury, resided in Connecticut. Victim #3 was a work colleague of Victims #1 and #2 in Connecticut.

1

5. In approximately Fall 2007, MENDOZA met Victim #1 in Jacksonville, Florida. In approximately Fall 2008, MENDOZA and Victim #1 eventually began a romantic relationship.

6. On approximately December 8, 2010, in the District of Connecticut and elsewhere, MENDOZA traveled in interstate commerce from Florida to New York and to Stamford, Connecticut with the intent to kill, injure, harass, and caused substantial emotional distress to Victim #1 and placed under surveillance with the intent to kill, injure, harass, and intimidate Victim #1, and in the course of and as a result of such travel placed Victim #1 in reasonable fear of death, serious bodily injury and caused substantial emotional distress to Victim #1 as set forth below.

Defendant's Course of Conduct to Injure Victim #1

7. From approximately Fall 2009 until January 2011, MENDOZA threatened, stalked, abused, harassed, caused emotional distress to and attempted to kill or cause serious bodily injury to Victim #1 after she attempted to end her romantic relationship with MENDOZA. To intimidate Victim #1 and place her in fear for her life, MENDOZA repeatedly threatened to injure Victim #1 and Victim #2 and Victim #3. MENDOZA's abusive conduct included:

(a) placing numerous harassing telephone calls to Victim #1 in Florida and Connecticut;

(b) threatening Victim #1 in Florida and in Connecticut;

(d) threating to kill Victim #2's dog in Florida and Connecticut;

(e) placing numerous harassing telephone calls to Victim #2 in Florida and Connecticut;

(f) placing numerous harassing telephone calls to Victim #3 in Connecticut;

(g) threatening Victim #3 in Connecticut;

(h) spying on Victim #1 in Connecticut;

(i) placing numerous harassing telephone calls to the restaurant where Victim #1, Victim #2 and Victim #3 worked; and

(j) attempting to kill or cause serious bodily injury to Victim #1 by placing two bottle bombs in Victim #1's car in Connecticut.

8. Beginning in approximately Fall 2009, MENDOZA verbally abused Victim #1 by criticizing Victim #1 about her wardrobe, friends, manner of speech and travels. MENDOZA's verbal abuse of Victim #1 damaged her self-esteem. MENDOZA prevented Victim #1 from spending time with others. MENDOZA appeared at Victim #1's place of employment to check on her whereabouts and inquire about her travels.

9. MENDOZA gained control of Victim #1's telephone, listened to her voicemail messages and reviewed her text messages. MENDOZA also accessed Victim #1's apartment without her permission, and made a copy of her car keys, which he used to access her car without permission. Over time, Victim #1 became frightened of MENDOZA and concerned for her safety. Consequently, Victim #1 changed the way she dressed and stopped going out in the evenings. Victim #1 became increasingly isolated from her family and friends.

10. In approximately Fall 2009, Victim #1 attempted to end her relationship with MENDOZA. Victim #1 knew that MENDOZA routinely accessed her telephone and at times deleted her messages. Victim #1 received threatening voicemails from MENDOZA. Victim #1 forwarded to Victim #2 some of MENDOZA's threatening voicemails before MENDOZA could delete them. In one message, MENDOZA told Victim #1: "And all that shit about leave me alone, that I'm no good, check this out: I think you're the one who's gonna, you're the one who's gonna disappear." In another voicemail message to Victim #1 in or about Fall 2009, MENDOZA

expressed his anger that Victim #1 might contact the police to report his abuse: "You and your boy call the cops on me or whatever? I ain't going for that. Watch. They say revenge is a mother fuc#er."

11. By Spring 2010, MENDOZA engaged in explicit threats of violence. On one occasion, MENDOZA entered Victim #1's apartment while she was sleeping and covered her with newspaper. Victim #1 awoke and realized that MENDOZA had a lighter and was threatening to set her on fire. On another occasion, MENDOZA drove to Victim #1's apartment and directed a laser light, which Victim #1 believed was affixed to a firearm, through her apartment window.

12. During Spring 2010, MENDOZA threatened Victim #2. MENDOZA's threats against Victim #2 escalated as his relationship with Victim #1 deteriorated. MENDOZA described to Victim #2 how he would cut up and kill her dog.

13. MENDOZA told Victim #1 and Victim #2 that he had contacts at the local police department, which made them afraid to report him.

14. In approximately Summer 2010, Victim #1 and Victim #2 devised a ruse. Victim #1 and Victim #2 told MENDOZA that Victim #1 had been accepted to a training program in Rhode Island where she would learn to be a manager for a restaurant chain but that she would return to Florida upon completing the program. MENDOZA told Victim #1 that he supported the decision to temporarily relocate to Rhode Island.

15. In approximately September 2010, Victim #1 and Victim #2 moved from Florida to Stamford, Connecticut, where they became roommates and began working at the same restaurant.

16. On or about, October 20, 2010, MENDOZA discovered the ruse and contacted

Victim #1 at the restaurant in Connecticut. MENDOZA accused Victim #1 of lying to him. MENDOZA became irate during the phone call and told Victim #1 he knew she was not in Rhode Island.

17. Later that same evening, MENDOZA contacted a member of his family who resided in New York ("Family Member") and instructed Family Member to call Victim #1's telephone and connect MENDOZA utilizing three-way calling. In this conversation, Victim #1 told MENDOZA that she lied to him because she wanted to end their romantic relationship but was afraid he would hurt her.

18. On October 22, 2010, MENDOZA purchased an airline ticket to travel from Florida to New York on November 4, 2010 and return on November 5, 2010.

19. In October 2010, MENDOZA repeatedly called Victim #1 and the restaurant where she worked. The calls became so frequent that Victim #1's employer advised her that the calls were interfering with Victim #1's job performance and the restaurant's business. Victim #1 also received calls from an unknown telephone number and a third-party Florida telephone number. When Victim #1's work colleagues attempted to assist her by calling the unknown telephone number to determine who was calling Victim #1, they began receiving calls from MENDOZA. Victim #3 was a work colleague who began receiving telephone calls from MENDOZA.

20. On or about October 30, 2010, Victim #1 and Victim #2 reported MENDOZA's threatening calls to the Stamford Police Department. The police advised Victim #1 to change her telephone number, which she did.

21. In approximately November 2010, MENDOZA repeatedly called Victim #2. Victim #2 received calls from MENDOZA, a restricted number, and a third-party Florida

telephone number.   Many calls consisted of silence or music.

22.     On approximately November 3, 2010, at MENDOZA's instruction, Family Member conducted an online search for Victim #1. The search was conducted from Family Member's computer, but was paid for with MENDOZA's credit card.

23.     On approximately November 4, 2010, MENDOZA arrived in New York and rented a car.  On the same day, a Stamford police officer called MENDOZA and asked MENDOZA to stop contacting Victim #1.

24.     On approximately November 4, 2010, Family Member drove MENDOZA to Stamford, Connecticut. MENDOZA and the Family Member went to Victim #1's place of work, drove to other nearby restaurants and then traveled to Victim #1 and Victim #2's apartment complex. MENDOZA and Family Member parked in an outdoor lot adjacent to the secured parking garage used by Victim #1 and Victim #2. MENDOZA exited the rental vehicle and looked for Victim #1.

25.     On approximately November 5, 2010, Victim #2 discovered key scratches on the right side of her vehicle, and Victim #1 discovered that her license plates had been removed from her car.

26.     On approximately November 5, 2010, MENDOZA returned to Florida.

27.     In approximately November 2010, MENDOZA placed harassing telephone calls to Victim #2 and Victim #3. The telephone calls to Victim #3 became increasingly threatening. MENDOZA repeatedly called Victim #3 and asked about Victim #1's whereabouts and work schedule. MENDOZA also informed Victim #3 that Victim #1 was dating an individual who was a manager at the restaurant.  During one telephone call, MENDOZA threatened Victim #3 by

telling him that he had associates in Connecticut and New York and that if MENDOZA placed a call to his associates, "you guys are done." Victim #3 became frightened and moved his residence and changed his telephone number.

28.     On approximately November 15, 2010, MENDOZA purchased tickets to fly to New York City on December 8, 2012, and return to Florida with Family Member on December 10, 2010.

29.     On approximately December 8, 2010, MENDOZA traveled from Florida to New York City and rented a car.

30.     On approximately December 8, 2010, MENDOZA and Family Member drove from New York City to Stamford, Connecticut. When MENDOZA and Family Member arrived at Victim #1's apartment, they looked for her vehicle. MENDOZA and Family Member were at Victim #1's residence. Between approximately 9:08 p.m. until 10:42 p.m, MENDOZA exited the rental car to look for Victim #1's vehicle.

31.     On approximately December 8, 2010, at approximately 9:30 p.m., Victim #1 returned from shopping and parked in her apartment building's secured garage. Victim #1 made two trips from her car to her apartment with shopping bags. When Victim #1 returned to her car at approximately 11:00 p.m., she observed that the interior of her car had been dampened by a foreign liquid. She also observed a two liter soda bottle on the driver's side floor. When Victim #1 picked the bottle up, it began to smoke and fizz. Victim #1 gently put the bottle down and ran from the car. She heard a loud bang which was the explosion of that bottle bomb. Victim #1 immediately called the police.

32.     The bottle found by Victim #1 contained acid, as had another bottle which had

exploded in the passenger's side of the vehicle prior to her approaching her car. The devices were acid bottle bombs that contained rolled up aluminum foil. When the aluminum foil made contact with the acid, it created a chemical reaction and produced a gas that caused the plastic soda bottles to explode, spraying acid in the vicinity of the explosion.

33. On approximately December 9, 2010 at 1:29 a.m., Victim #2 received the following text message: "Give [manager] some advise not follow [Victim #1] so close down into the garage he could mess up his pretty lil car, they have pics of her getting into his car in the garage. And him swiping her pass they were followed to there destination . . ." On approximately December 10, 2010, MENDOZA returned to Florida with Family Member.

34. In a December 16, 2010 recorded telephone call to Victim #2, MENDOZA made the following statements:

(a) "It seems like your girl [referring to Victim #1] don't understand. She ain't gonna win."

(b) "She's become my problem. And guess what? Frank is not going to rest."

(c) "The message is going to be delivered to her."

(d) "You were given a pass. You were given a pass because in actuality you're right, you don't have nothing to do with this."

(e) "She can go to the moon, and I'll know where she's at in the moon."

(f) "I'm going to teach her, alright? What it is . . . not to play."

(g) "The message is: get the hell out."

(h) "Nobody never worries about it . . . Nobody worries about nothing. But with Frank, everybody's gotta worry. Because no one knows how Frank is."

All in violation of Title 18, United States Code, Section 2261A(1).

## COUNT TWO
### (Use of Explosive in the Commission of a Federal Felony)

35. The allegations set forth in paragraphs 1-5, and 7-34 of Count One are realleged and incorporated by reference.

36. On approximately December 8, 2010, in the District of Connecticut, MENDOZA knowingly used explosive material, namely two acid bottle bombs, to commit interstate stalking, a violation of Title 18, Unites States Code, Section 2261A and a felony prosecutable in a court of the United States.

In violation of Title 18, United States Code, Section 844(h)(1).

## COUNT THREE
### (Interstate Domestic Violence)

37. The allegations set forth in paragraphs 1-5 and 7-34 of Count One are realleged and incorporated by reference.

38. On approximately December 8, 2010, in the District of Connecticut and elsewhere, MENDOZA traveled in interstate commerce from Florida to New York to Stamford, Connecticut with the intent to kill, injure, harass and intimidate Victim #1, an intimate partner and a dating partner, and as a result of such travel, attempted to commit a crime of violence against Victim #1.

In violation of Title 18, United States Code, Sections 2261(a)(1).

## COUNT FOUR
### (Use of Explosives in the Commission of a Federal Felony)

39. The allegations set forth in paragraphs 1-5 and 7-34 of Count One are realleged and incorporated by reference.

40.     On approximately December 8, 2010, in the District of Connecticut, MENDOZA knowingly used explosive material, namely two acid bottle bombs, to commit interstate domestic violence, a violation of Title 18, Unites States Code, Section 2261(a)(1) and a felony prosecutable in a court of the United States.

In violation of Title 18, United States Code, Section 844(h)(1).

COUNT FIVE
(Interstate Stalking: Use of Telephone relating to Victim #1)

41.     The allegations set forth in paragraphs 1-5 and 7-34 of Count One are realleged and incorporated by reference.

42.     From between approximately October 2010 to December 2010, in the District of Connecticut and elsewhere, with the intent to: (1) injure, harass and cause substantial emotional distress to Victim #1, and (2) place Victim #1 in reasonable fear of death and serious bodily injury, MENDOZA did knowingly use a facility of interstate commerce from outside the State of Connecticut to engage in a course of conduct that caused substantial emotional distress to Victim #1 and placed her in reasonable fear of death and serious bodily injury, that is, MENDOZA caused telephone calls to be made to Victim #1 while she was in Connecticut.

In violation of Title 18, United States Code, Sections 2261A(2).

COUNT SIX
(Interstate Stalking: Use of Telephone relating to Victim #2)

43.     The allegations set forth in paragraphs 1-5 and 7-34 of Count One are realleged and incorporated by reference.

44.     From between approximately November 2010 to January 2011, in the District of Connecticut and elsewhere, with the intent to: (1) injure, harass and cause substantial emotional

distress to Victim #2, and (2) place Victim #2 in reasonable fear of death and serious bodily injury, MENDOZA did knowingly use a facility of interstate commerce from outside the State of Connecticut to engage in a course of conduct that caused substantial emotional distress to Victim #2 and placed her in reasonable fear of the death and serious bodily injury, that is, MENDOZA caused telephone calls and text messages to be made to Victim #2 while she was in Connecticut.

In violation of Title 18, United States Code, Sections 2261A(2).

## COUNT SEVEN
(Interstate Stalking: Use of Telephone relating to Victim #3)

45.     The allegations set forth in paragraphs 1-5 and 7-34 of Count One are realleged and incorporated by reference.

46.     From between approximately October 2010 to December 2010, in the District of Connecticut and elsewhere, with the intent to: (1) injure, harass and cause substantial emotional distress to Victim #3, and (2) place Victim #3 in reasonable fear of death and serious bodily injury, MENDOZA did knowingly use a facility of interstate commerce from outside the State of Connecticut to engage in a course of conduct that caused substantial emotional distress to Victim #3 and placed him in reasonable fear of death and serious bodily injury, that is, MENDOZA caused telephone calls to be made to Victim #3 while he was in Connecticut.

In violation of Title 18, United States Code, Sections 2261A(2).

A TRUE BILL

**s/Foreperson**

_____
FOREPERSON

UNITED STATES OF AMERICA

_____
DAVID B. FEIN
UNITED STATES ATTORNEY

_____
KRISHNA PATEL
ASSISTANT UNITED STATES ATTORNEY

_____
VANESSA RICHARDS
ASSISTANT UNITED STATES ATTORNEY